Ryan E. Simpson (11300)
Attorney for Debtors
8839 South Redwood Road, Suite C2
West Jordan, Utah 84088
Telephone:  (801) 432-8682
Fax:  (888) 247-2541

## IN THE UNITED STATES BANKRUPTCY COURT
### DISTRICT OF UTAH

| | |
|---|---|
| IN RE:<br><br>JANET K. GUNDERSON<br>TONY M. GUNDERSON (DECEASED)<br><br>                          Debtor. | Case No.:   14-32414<br>              Chapter 13<br><br>Judge:   Hon. Joel T. Marker |

## MOTION TO APPROVE ASSUMPTION OF LOAN AND MOTION TO APPROVE MODIFICATION OF MORTGAGE ON REAL PROPERTY

COME NOW the Debtor above-names, by and through Counsel, and move the Court for an Order approving the assumption of a loan and the modification of their mortgage loan on their residential real property. Debtor asserts the following:

1. Debtor has been negotiating with Ditech Financial fka Green Tree Servicing (hereinafter "Secured Creditor") since 2015 for the Debtor's primary residence located at 9929 North Mulberry Drive, Cedar Hills, Utah 84062 (hereinafter "Residence").

2. Secured Creditor has filed a claim for arrearages in the amount of $31,168.54.

3. The loan with Secured Creditor for the Debtors residence is solely in Tony M. Gunderson's name.

4. On September 21, 2015 Secured Creditor issued a trial loan modification with payments to begin November 1, 2015 (See Exhibit "A").

5. After Secured Creditor issued the trial loan modification, Debtor Tony Gunderson passed away on November 26, 2015 (See Exhibit "B").

6. In March of 2016 Secured Creditor issued the final loan modification documents (See Exhibit "C").

7. Debtor through counsel contacted Secured Creditor prior to signing the final loan modification documents and was instructed to have Debtor Janet Gunderson sign the modification on behalf of her deceased husband.

8. Debtor executed the final loan modification documents in good faith and in reliance on Secured Creditors statement.

9. Debtor has continued to make the modification payments to Secured Creditor.

10. Debtor through counsel since March of 2016 has continued to negotiate with Secured Creditor to resolve this situation.

11. Secured Creditor has finally agreed to honor the loan modification, but before doing so, has requested the court for an order to approve the modification and allow Debtor Janet Gunderson to assume the loan on the primary residence (See Exhibit "D").

12. It is estimated that once Secured Creditor amends their claim after the modification and assumption are approved, the estimated chapter 13 payment will be $100.00 a month for the remainder of the plan.

13. Upon execution of the final loan modification and/or assumption documents by all parties, Debtor will file a separate motion to amend the claim filed by Secured Creditor.

14. Counsel has expended time and expense on this motion of value to the debtor and estate.  Such time and expense should be allowed by the Court in an amount not exceeding $1,000.00.  Such administrative expense claim should be paid by the trustee forthwith, prior to payment of other claims.

WHEREFORE, based upon the above, the debtor respectfully request an Order from the Court approving the authorizing the approval of the Assumption of the Loan by Debtor Janet Gunderson and Loan Modification of the loan with Secured Creditor.

Dated this <u>17th</u> day of March, 2017.

<u>/s/ Ryan E. Simpson</u>
Ryan E. Simpson
Attorney for Debtor

# Exhibit A

**HELP FOR AMERICA'S HOMEOWNERS.**

MAKING ⬆⬆⬆ AFFORDABLE



**ditech.**

a Walter company

September 16, 2015

RYAN E SIMPSON
8839 S REDWOOD RD STE C2
WEST JORDAN UT 84088-9288

*You may be able to make your payments more affordable.*
*Act now to get the help you need!*

Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172

Re: Ditech Financial LLC ("Ditech")
    Borrower Name:   TONY M. GUNDERSON
    Account Number:   ██████3484
    Property Address:  9929 NORTH MULBERRY DR
                      CEDAR HILLS, UT  84062



Dear Ryan E Simpson:

**Congratulations!** Your client is approved to enter into a trial period plan under the Home Affordable Modification Program.  This is the first step towards qualifying for a more affordable mortgage payment. Please read this letter so that your client understands all of the steps they need to take to modify their mortgage payments.

**What your client needs to do...**
To accept this offer, your client must make their first monthly "trial period payment."  To qualify for a permanent modification, your client must make the following trial period payments in a timely manner:

| | | |
|---|---|---|
| 1st payment: | $1,036.33 | by 11/01/2015 |
| 2nd payment: | $1,036.33 | by 12/01/2015 |
| 3rd payment: | $1,036.33 | by 01/01/2016 |

After all trial period payments are timely made and your client has met all of the applicable qualification requirements, their mortgage will then be permanently modified.  (Your client's existing account and account requirements remain in effect and unchanged during the trial period).  **If each payment is not received by Ditech in the month in which it is due, this offer will end and your client's account will not be modified under the terms described in this offer.**

If your client is in bankruptcy and they are required to receive Bankruptcy Court approval of the modification, they may continue making their monthly Trial Period Plan payments until they receive approval.  If your client is currently making their mortgage payments to a Trustee, they should continue to forward their monthly payment to the Chapter 13 Trustee.

If your client has any questions or if they cannot afford the trial period payments shown above, or if they have decided to leave their property but want to avoid foreclosure should their bankruptcy be discharged or dismissed, please call us at  1-800-643-0202 as we may be able to help them. (Also, please review the attached "Frequently Asked Questions".)

HAMP Trial Period Plan – Verified Active BK, 01/10/2014           YAHMPB04  1.2           LTR-632(ABK)

Ditech has designated the following address where mortgage loan customers must send any Qualified Written Request, Notice of Error, or Request for Information: PO Box 6176 Rapid City SD 57709-6176.

Sincerely,

Ditech
1-800-643-0202
Monday - Friday 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CST

**\*\*BANKRUPTCY NOTICE\*\* If your client is in bankruptcy or has been discharged in bankruptcy, this letter is for informational purposes only and is not intended to collect a debt, or an act to collect, assess, or recover all or any portion of the debt from your client.**



Attachments: (1) Frequently Asked Questions and (2) Additional Trial Period Plan Information and Legal Notices.

The *Making Home Affordable Program* was created to help millions of homeowners refinance or modify their mortgages.  As part of this program, we - your mortgage servicer - and the Federal Government are working to offer you options to help you stay in your home.

**FREQUENTLY ASKED QUESTIONS**    Get the answers you need to some of the most common questions.

**Q. What else should my client know about this offer?**

- Your client will not be charged any fees for this trial period plan or a permanent modification.
- If your client's account is modified, we will waive all unpaid late charges.
- Your client may be required to attend credit counseling.

**Q. Why is there a trial period?**

The trial period offers your client immediate payment relief and gives them time to make sure they can manage the lower monthly mortgage payment. The trial period is temporary, and your client's existing account and account requirements remain in effect and unchanged during the trial period.

**Q. How was my client's new payment in the trial period determined?**

Your client's trial period payment is approximately 31% of their total gross monthly income, which we determined to be $3,342.98 based upon the income documentation they provided. If the account is successfully modified, your client's new payment also will be based on 31% of their gross income. In addition, if your client's existing payment includes mortgage insurance premiums, this amount will also be added to their payment. If we were able to permanently modify your client's account today, we estimate their modified interest rate would be 2.00000%. Your client's final modified interest rate may be different.



The modified payment should be sufficient to pay the principal and interest as well as property taxes, insurance premiums and other permissible escrow fees based on our recent analysis of these costs. Your client's modified monthly payment may change if their property taxes and insurance premiums change. If your client does not have an escrow account before, the timing of their tax and insurance bills may require that they make a payment to cover any such bills when they come due. This is known as an escrow shortage. Your client's account has an escrow shortage of $278.24; this can either be paid in a lump sum when the account is modified or over the next 60 months in an amount of $4.64 per month in addition to your client's modified monthly mortgage payment. If your client wishes to pay the total shortage as a lump sum, please contact us at 1-800-643-0202.

**Q. When will I know if my client's account can be modified permanently and how will the modified account balance be determined?**

Once your client makes all of their trial period payments on time, we will send you a modification agreement detailing the terms of the modified account. Any difference between the amount of the trial period payments and your client's regular mortgage payments will be added to the balance of their account along with any other past due amounts as permitted by their account documents. While this will increase the total amount of the account balance, it should not significantly change the amount of their modified mortgage payment as that is determined based on their total monthly gross income, not their account balance.

**Q. Are there incentives that my client may qualify for if they are current with their new payments?**

Once your client's account is modified, they can earn a pay-for-success incentive for every month that they make on-time payments beginning with the trial period payments. Depending on your client's modified monthly payment, they may accrue up to $1,000 each year for five years for a total of $5,000. This important benefit, *which will be applied to your client's principal balance each year after the anniversary date of their first trial period payment due date,* will help them earn equity in their home by reducing the amount that they owe. However, your client must remain current on their account. Your client will lose this benefit if their modified account loses good standing, which means that the equivalent of three full monthly payments are due and unpaid on the last day of any month, at any time during this five year period. If your client loses this benefit, they will lose all accrued, unapplied incentive payments.

**Q. Will my client's interest rate and principal and interest payment be fixed after their account is permanently modified?**

Once your client's account is modified, their interest rate and monthly principal and interest payment will be fixed for the life of their mortgage **unless** their initial modified interest rate is below current market interest rates. In that case, the below market interest rate will be fixed for five years. At the end of the fifth year, your client's interest rate may increase by 1% per year until it reaches a cap. The cap will equal the market rate of interest being charged by mortgage lenders on the day your client's modification agreement is prepared (the Freddie Mac Primary Mortgage Market Survey Rate for 30-year, fixed-rate conforming mortgages). Once your client's interest rate reaches the cap it will be fixed for the remaining life of their account. Your client's new monthly payment will also include an escrow for property taxes, hazard insurance and other escrowed expenses. If the cost of your client's homeowners insurance, property tax assessment or other escrowed expenses increases, their monthly payment will increase as well.

**Q. What if my client has other questions about Home Affordable Modification that cannot be answered by their mortgage servicer?**

Call the Homeowner's HOPE™ Hotline at **1-888-995-HOPE (4673).** This Hotline can help with questions about the program and offers access to free HUD-certified counseling services in English and Spanish.



**Q. What if my client is aware of fraud, waste, mismanagement or misrepresentations affiliated with the Troubled Asset Relief Program?**

Please contact SIGTARP at 1-877-SIG-2009 (toll-free), 1-202-622-4559 (fax) or www.sigtarp.gov and provide them with your name, our name as your servicer, your property address, account number and reason for escalation. Mail can be sent to: Hotline Office of the Special Inspector General for Troubled Asset Relief Program, 1801 L Street NW, Washington, DC 20220.



## Additional Trial Period Plan Information and Legal Notices

The terms of your client's trial period plan below are effective on the day they make their first trial period payment, provided they have paid it on or before November 1, 2015.  Your client and we agree that:

**If your client's monthly payment did not include escrows for taxes and insurance, they are now required to do so:**

- Your client agrees that any prior waiver that allowed them to pay directly for taxes and insurance is revoked. Your client agrees to establish an escrow account and to pay required escrows into that account.

**Your client's current account documents remain in effect; however, they may make the trial period payment instead of the payment required under their account documents:**

- Your client agrees that all terms and provisions of their current mortgage note and mortgage security instrument remain in full force and effect and they will comply with those terms; and that nothing in the trial period plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the account documents.





a Walter company

Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172
Phone: 1-800-643-0202
Fax: 1-866-870-9919
Ditech.com

September 16, 2015

RYAN E SIMPSON
8839 S REDWOOD RD STE C2
WEST JORDAN UT 84088-9288

RE: Ditech Financial LLC ("Ditech")
Customer Name(s): TONY M. GUNDERSON
Account Number:    ███3484
Property Address:   9929 NORTH MULBERRY DR
CEDAR HILLS, UT  84062

**THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOUR CLIENT IS CURRENTLY IN BANKRUPTCY OR THIS DEBT WAS DISCHARGED IN A BANKRUPTCY, THE SERVICER IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DEBT AS THEIR PERSONAL LIABILITY.**

Dear Ryan E Simpson:

Congratulations! Your client was approved for a modification Trial Period Plan. As part of Ditech's continued commitment to provide our customers with a clear understanding of the terms of their loss mitigation offer, the terms of the proposed modification are listed below.

**THESE ARE NOT YOUR CLIENT'S FINALIZED MODIFICATION TERMS AND ARE SUBJECT TO CHANGE.**



| PROPOSED MODIFICATION INFORMATION | | |
|---|---|---|
| The fields below describe the proposed modification that was calculated by Ditech according to the program guidelines (subject to investor restrictions) that were used in your client's evaluation. If more than one amortization term was listed on your client's modification Trial Period Plan, please note that this summary was created based upon the terms that provide the lowest principal and interest payment amount. These terms are not the final modification terms and may be subject to change when the final modification calculations are completed. | | |
| 1. Unpaid Principal Balance of the Proposed Modification (Net of Forbearance & Principal Reduction) | This field identifies the beginning principal balance on which your client would have been required to pay interest if they had received a modification. | $248,806.54 |
| 2. Interest Rate of the Proposed Modification | This field identifies the starting interest rate of the proposed modified mortgage. | 2.00000% |
| 3. Amortization Term of the Proposed Modification | This field identifies the number of months left to pay the proposed modified mortgage. | 480 |
| 4. Principal and Interest Payment of the Proposed Modification | This field identifies the amount of the monthly principal and interest payment on the proposed modified mortgage. | $753.45 |
| 5. Principal Forbearance Amount of the Proposed Modification | This field identifies the amount of principal your client's investor may be willing to forbear on the proposed modified mortgage. Your client will still owe this amount, but they will not be charged interest on it and no payments will be due on this amount until your client paid off their account. | $95,478.33 |
| 6. Principal Forgiveness Amount of the Proposed Modification | This field identifies the amount of principal your client's investor is willing to forgive under the proposed modified mortgage. | $0.00 |

If you or your client wish to discuss your client's account, or have any other questions, please contact your client's

Proposed Modification Terms at TPP ABK, 03/16/2015                                     LTR-735(ABK)

X

account representative.  Your client's assigned account representative is Heather H.  at 1-800-643-0202, extension 55311; Ditech has designated the following address where mortgage loan customers must send any Qualified Written Request, Notice of Error, or Request for Information: PO Box 6176 Rapid City SD 57709-6176.

Sincerely,

Ditech
1-800-643-0202
Monday - Friday 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CST



# Exhibit B

Access to information on
this form is limited under
the Vital Statutes Act
and Rules

STATE OF UTAH - DEPARTMENT OF HEALTH
# CERTIFICATE OF DEATH

LOCAL FILE NUMBER         STATE FILE NUMBER 2015015998

| | | | |
|---|---|---|---|
| 1. DECEDENT'S LEGAL NAME (include AKA's, if any) (First, Middle, Last) | | 2. SEX | 3a. DATE OF DEATH (Mo, Day, Yr.) | 3b. TIME OF DEATH |
| Alton Maurice Gunderson (AKA Tony Maurice Gunderson) | | Male | November 26, 2015 | 10:06 |

| | | | | | |
|---|---|---|---|---|---|
| 4. DATE OF BIRTH (Mo., Day, Yr.) | 5. AGE-Last Birthday (Years) | IF UNDER 1 YEAR Months Days | IF UNDER 24 HRS Hours Minutes | 6. BIRTHPLACE (City & State or Foreign Country) | 7. SOCIAL SECURITY NUMBER |
| July 25, 1943 | 72 | | | SanDiego, California | Confidential |

**DECEDENT**

8a. PLACE OF DEATH (Check only one)
IF DEATH OCCURRED IN A HOSPITAL: ☐ 1. Inpatient ☐ 2. ER/Outpatient ☐ 3. DOA
IF DEATH OCCURRED SOMEWHERE OTHER THAN A HOSPITAL: ☐ 5. Nursing Home/Long term care facility ☒ 6. Decedent's Home ☐ 7. Other (specify)

| | | |
|---|---|---|
| 8b. NAME OF HOSPITAL, NURSING HOME OR OTHER FACILITY (If outside a facility, give street address of location) | 8c. COUNTY OF DEATH | 8d. CITY, TOWN OR LOCATION OF DEATH |
| 9929 North Mullberry Drive | Utah | Cedar Hills |

| | | |
|---|---|---|
| 9. WAS DECEDENT EVER IN THE U.S. ARMED FORCES? ☒ 1. Yes ☐ 2. No ☐ 3. Unk. | 10. MARITAL STATUS ☐ 1. Never Married ☒ 2. Married ☐ 3. Widowed ☐ 4. Divorced ☐ 5. Married, but separated ☐ 6. Unknown | 11. SURVIVING SPOUSE'S NAME (If wife, give name prior to first marriage) Janet Lucille Kirk |

| | | |
|---|---|---|
| 12a. DECEDENT'S USUAL OCCUPATION (Give kind of work done during most of working life. Do NOT enter retired. Engineer | 12b. KIND OF BUSINESS OR INDUSTRY Power Plant | 13a. RESIDENCE - STREET AND NUMBER 9929 North Mullberry Drive |

| | | | |
|---|---|---|---|
| 13b. STATE Utah | 13c. COUNTY Utah | 13d. CITY, TOWN, COMMUNITY, OR RURAL Cedar Hills | 13e. ZIP CODE 84062 | 13f. INSIDE CITY LIMITS? ☒ 1. Yes ☐ 2. No |

**PARENTS**

| | |
|---|---|
| 14. FATHER'S NAME (First, Middle, Last) Alton Gunderson | 15. MOTHER'S NAME PRIOR TO FIRST MARRIAGE (First, Middle, Last) Maurice Alsop |

**INFORMANT**

16. NAME, RELATIONSHIP AND MAILING ADDRESS OF INFORMANT (Street & Number, City, State, Zip)
Janet Lucille Kirk Gunderson , Wife, 9929 North Mullberry Drive , Cedar Hills, Utah 84062

**DISPOSITION**

| | | |
|---|---|---|
| 17. METHOD OF DISPOSITION ☐ 1. Entombment ☐ 2. Donation ☐ 3. Other ☒ 4. Burial ☐ 5. Cremation ☐ 6. Removal | 18a. DATE OF DISPOSITION Unknown | 18b. PLACE OF DISPOSITION (name of cemetery, crematory, or other place) |

| | | |
|---|---|---|
| 18c. LOCATION OF DISPOSITION - City or Town, State | 19. LICENSEE NUMBER | 20. FUNERAL HOME / DISPOSITIONER (Name and complete address) |
| 21. SIGNATURE OF FUNERAL SERVICE LICENSEE / DISPOSITIONER | | Premier Funeral Services 7043 Commerce Park Drive Salt Lake City, Utah 84047 |

**CERTIFIER**

22. CERTIFIER (Check only one)
☐ 1. MEDICAL PROFESSIONAL: To the best of my knowledge, death occurred at the time, date and place, and due to the cause(s) and manner as stated.
☐ 2. MEDICAL EXAMINER: On the basis of examination and/or investigation, in my opinion, death occurred at the time, date, place and due to the cause(s) and manner as stated.
M.E. Case No.

22a. Was Medical Examiner Contacted? ☐ 1. Yes ☒ 2. No

| | | |
|---|---|---|
| SIGNATURE & TITLE OF CERTIFIER | LIC. NO. 365610-1205 | DATE SIGNED // |

| | |
|---|---|
| 23a. NAME, ADDRESS AND ZIP CODE FOR PERSON WHO CERTIFIED THE CAUSE OF DEATH (Item 24) (Type/Print) Nobuhara, MD, Lawrence K, Central Utah Clinic 1055 North 500 West, Provo, Utah 84604 | 23b. DATE DECEASED WAS LAST ATTENDED BY PHYSICIAN November 26, 2015 |

**CAUSE OF DEATH**

24. PART I. Enter the chain of events-diseases, injuries, or complications-that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. Enter only one cause on a line.

Approximate Interval Between Onset and Death:

IMMEDIATE CAUSE (Final disease or condition resulting in death)
a. _____ DUE TO (OR AS A CONSEQUENCE OF):

Sequentially list conditions, if any, leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated events resulting in death) LAST
b. _____ DUE TO (OR AS A CONSEQUENCE OF):
c. _____ DUE TO (OR AS A CONSEQUENCE OF):
d. _____

| | | |
|---|---|---|
| PART II. Other significant Conditions contributing to death but not resulting in the underlying cause given in Part I | 25a. WAS AN AUTOPSY PERFORMED? ☐ 1. Yes ☐ 2. No | 25b. WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? ☐ 1. Yes ☐ 2. No |

| | | |
|---|---|---|
| 26. IN YOUR OPINION, TOBACCO USE BY THE DECEDENT: ☐ 1. Probably contributed to the cause of death ☐ 2. Was the unequivocal cause of death ☐ 3. Did not contribute to the cause of death ☐ 4. Is unknown in relation to cause of death ☐ 5. NON USER ☐ 6. UNKNOWN IF USER | 27. MANNER OF DEATH ☐ 1. Natural ☐ 2. Accident ☐ 3. Suicide ☐ 4. Homicide ☐ 5. Could not be Determined ☐ 6. Pending Investigation | 28. IF FEMALE ☐ 1. Not pregnant within past year ☐ 2. Pregnant at time of death ☐ 3. Not pregnant, but pregnant within 42 days of death ☐ 4. Not pregnant, but pregnant 43 days to 1 year before death ☐ 5. Unknown if pregnant within the past year |

| | | | |
|---|---|---|---|
| 29a. DATE OF INJURY (Mo., Day, Yr.) // | 29b. TIME OF INJURY (24 hr. clock) | 29c. INJURY AT WORK? ☐ 1. Yes ☐ 2. No | 29d. PLACE OF INJURY - At home, farm, street, factory, office, building, etc. (Specify) | 29e. If motor vehicle accident: ☐ 1. Driver ☐ 2. Passenger ☐ 3. Pedestrian ☐ 4. Other ☐ 5. Unknown |

29f. LOCATION (Street or rural route number; city or town, county and state)
29g. DESCRIBE HOW INJURY OCCURRED (enter sequence of events which resulted in injury, NATURE OF INJURY should be entered in item 24)

**RACE AND EDUCATION**

30. WAS DECEDENT OF HISPANIC ORIGIN? (Check the "No" box if decedent is not Spanish/Hispanic/Latino.)
☐ 1. Yes ☒ 2. No ☐ 3. Unknown
(If yes, Check the box that best describes whether the decedent is Spanish/Hispanic/Latino.)
☐ 1. Yes, Mexican, Mexican American, Chicano
☐ 2. Yes, Cuban
☐ 3. Yes, Puerto Rican
☐ 4. Yes, other Spanish/Hispanic/Latino (Specify)

31. DECEDENT'S RACE (Check one or more races to indicate what the decedent considered himself or herself to be)
☒ 01. White
☐ 02. Black or African American
☐ 03. American Indian or Alaska Native (Name of the enrolled or principal tribe)
☐ 04. Chinese ☐ 05. Japanese
☐ 06. Native Hawaiian ☐ 07. Filipino
☐ 08. Other Asian (Specify)
☐ 10. Asian Indian ☐ 11. Korean
☐ 12. Samoan ☐ 13. Vietnamese
☐ 14. Guamanian or Chamorro ☐ 16. Unknown
☐ 15. Other Pacific Islander (Specify)
☐ 00. Other (Specify)

32. DECEDENT'S EDUCATION (Check the box that best describes the highest degree or level of school completed at the time of death.)
☐ 0. None
☐ 1. 8th grade or less
☐ 2. 9th - 12th grade; no diploma
☐ 3. High School graduate or GED completed
☐ 4. Some college credit; but no degree
☒ 5. Associate degree (e.g., AA, AS)
☐ 6. Bachelor's degree (e.g., BA, AB, BS)
☐ 7. Master's degree (e.g., MA, MS, MEng, MEd, MSW, MBA)
☐ 8. Doctorate (e.g., PhD, EdD) or Professional degree (e.g., MD, DDS, DVM, LLB, JD)
☐ 9. Unknown

UDOH-OVRS Form 1/2) Rev. 11/30/04

**REGISTRAR**

| | |
|---|---|
| 33. REGISTRAR'S SIGNATURE | 34. DATE FILED (Mo., Day, Yr.) |

# Exhibit C

Investor Loan #  3070

**After Recording Return To:**
Ditech Financial LLC
7360 South Kyrene Road, T214
Tempe, AZ 85283

This document was prepared by Ditech Financial LLC

_____ [SPACE ABOVE THIS LINE FOR RECORDING DATA]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I")1: TONY M. GUNDERSON
Lender ("Lender"): Ditech Financial LLC
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 08/02/2007
Loan Number: ▮▮▮▮3484 Recorded 08/13/2007 Instrument No. 117487:2007
Property Address *[and Legal Description if recordation is necessary]* ("Property"):
9929 NORTH MULBERRY DR
CEDAR HILLS, UT 84062



**THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOUR CLIENT IS CURRENTLY IN BANKRUPTCY OR THIS DEBT WAS DISCHARGED IN A BANKRUPTCY, THE SERVICER IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DEBT AS THEIR PERSONAL LIABILITY.**

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations** . I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B. I live in the Property as my principal residence, and the Property has not been condemned;
   C. There has been no change in the ownership of the Property since I signed the Loan Documents;
   D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));
   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
   G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

_____

1If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A. TIME IS OF THE ESSENCE under this Agreement;

B. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 03/01/2016 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 03/01/2016.



A. The new Maturity Date will be: 02/01/2056.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan and less Principal in the amount of $.00 which has been forgiven. The new principal balance of my Note will be $348,247.13 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. $92,373.82 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $255,873.31. Interest at the rate of 2.00000% will begin to accrue on the Interest Bearing Principal Balance as of 02/01/2016 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 03/01/2016. My payment schedule for the modified Loan is as follows:

HAMP Agreement, 02/28/2012

LTR-602



| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 02/01/2016 | $774.85 | $261.48 adjusts annually after year 1 | $1,036.33 adjusts annually after year 1 | 03/01/2016 | 60 |
| 6 | 3.000% | 02/01/2021 | $900.20 | Adjusts Annually | Adjusts Annually | 03/01/2021 | 12 |
| 7-40 | 3.750% | 02/01/2022 | $998.55 | Adjusts Annually | Adjusts Annually | 03/01/2022 | 408 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.



I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

G. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.



E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification

x

Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N.  I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents."  I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement.  (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)



In Witness Whereof, the Lender and I have executed this Agreement.

Ditech Financial LLC
FKA Green Tree Servicing, LLC
Lender

_Janet K. Gunderson_   3/31/2016
~~TONY M.~~ GUNDERSON
_Janet K._
Date

By:_____

_____
Date

Account#: 681623484

_____   **[SPACE BELOW THIS LINE FOR ACKNOWLEDGEMENT]**   _____

x

STATE OF: UTAH

COUNTY OF:

On the **3 1** day of ___Merch___ , 20 **16** , personally appeared before me

~~TONY M. GUNDERSON~~  Janet Gunderson

the signer(s) of the foregoing instrument, who duly acknowledged to me that he/she/they
executed the same.

_____

Notary Public

My Commission Expires:

Residing **Salt Lake County**       at: **10-23-18**



NOTARY PUBLIC
**RYAN EUGENE SIMPSON**
Commission No. 680815
Commission Expires
**OCTOBER 23, 2018**
STATE OF UTAH

Exhibit "A"

LOT 145, PLAT "A", LAKEVIEW SUBDIVISION, CEDAR HILLS, UTAH, ACCORDING TO
THE OFFICIAL PLAT THEREOF, RECORDED IN THE OFFICE OF THE UTAH COUNTY
RECORDER, STATE OF UTAH.  TAX ID: 45:218:0145

# Exhibit D

**ryan@startfreshutah.com**

| | |
|---|---|
| **From:** | Weber, Amanda K. <amanda.weber@ditech.com> |
| **Sent:** | Monday, March 13, 2017 8:20 AM |
| **To:** | Craig Cordial |
| **Cc:** | Tony Gunderson; ryan |
| **Subject:** | RE: Acct #: 00****0606 Gunderson |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Hello Craig,

I'm sorry I didn't get ahold of you on Friday.  I was able to speak with the rep and she stated that the only thing that is holding it back now is the permission from the court for Mrs. Gunderson to  assume the loan.  I did ask her why the Affidavit wouldn't work to show ownership she stated that it's due to it being in BK that the underwriter will require that the courts know that she is taking on the loan.  Will you please request it and I will get it to loss mit once filed.  Let me know if you have any other questions.  I do apologies for all of the delays.

Thank you

**Amanda  Weber**
**Ditech Home Loans**
Bankruptcy Rep | Bankruptcy

**Ditech Financial LLC** | 1400 Turbine Dr, Rapid City, SD 57703
T  888-298-7785 ext 55112 |  F   866-529-1471|

amanda.weber@ditech.com  |  ditech.com

Connect with us: Facebook | Twitter | Google+ | LinkedIn | Instagram


HOME LOANS

We... Raise the Bar  #OwnIt  Connect  Do the Right Thing

**\*\*\*Please send me the motion to review and approve before filing with the courts\*\*\***

**\*\*\*Please have all motions sent for approval within 5 business days and filed with the courts within 7 business days\*\*\***

**\*Per FNMA guidelines, please provide me with a copy of the motion that is being filed with the courts\***

1

**ryan@startfreshutah.com**

| | |
|---|---|
| **From:** | Weber, Amanda K. <amanda.weber@ditech.com> |
| **Sent:** | Monday, March 13, 2017 9:17 AM |
| **To:** | Craig Cordial |
| **Cc:** | Tony Gunderson; ryan |
| **Subject:** | RE: Acct #: 00****0606 Gunderson |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Hello Craig,

The assumption will be needed before the form can be completed, I was looking for a specific form but I could find one for the district you are in. I believe that you would just need to advise the court the she has received the property by the affidavit and that she has agreed to take full responsibility for the remainder of the loan. The loss mit team will generate a whole new document for Mrs. Gunderson once the court is advise of her accepting the loan.

We would counter sign the agreed order once Mrs. Gunderson signs and the court has approved. Unfortunately with it going through the BK we have to advise the court before we can approve everything. Let me know if you need any other information.

Thank you

**Amanda Weber**
**Ditech Home Loans**
Bankruptcy Rep | Bankruptcy

**Ditech Financial LLC** | 1400 Turbine Dr, Rapid City, SD 57703
T  888-298-7785 ext 55112 |  F   866-529-1471|

amanda.weber@ditech.com  |  ditech.com

Connect with us: Facebook | Twitter | Google+ | LinkedIn | Instagram



HOME LOANS

We... Raise the Bar | #Own It | Connect | Do the Right Thing

**\*\*\*Please send me the motion to review and approve before filing with the courts\*\*\***

**\*\*\*Please have all motions sent for approval within 5 business days and filed with the courts within 7 business days\*\*\***

1